MARK D. LITVACK (SBN 183652)
mark.litvack@pillsburylaw.com
JEFFREY D. WEXLER (SBN 132256)
jeffrey.wexler@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: 213.488.7100
Facsimile: 213.629.1033

Attorneys for Plaintiff and Counterclaim Defendant
THE BOARD OF TRUSTEES OF THE LELAND
STANFORD JUNIOR UNIVERSITY and
Counterclaim Defendant LI NANYANG

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY, <br><br> Plaintiff, <br><br> vs. <br><br> ZHANG YUZHEN, an individual; FAN MIAO, an individual; FAN MAO, an individual; and all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud upon plaintiff's title thereto, <br><br> Defendants. <br><br> YUZHEN ZHANG, an individual, <br><br> Counterclaim Plaintiff, <br><br> vs. <br><br> THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY; and LI NANYANG, an individual, <br><br> Counterclaim Defendants. | Case No. 4:19-cv-02904-SBA (JCS) <br><br> **NOTICE OF MOTION AND MOTION OF PLAINTIFF AND COUNTERCLAIM DEFENDANT THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY TO DISQUALIFY DLA PIPER LLP (US) AS COUNSEL FOR DEFENDANT AND COUNTERCLAIM PLAINTIFF ZHANG YUZHEN; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date:  July 13, 2022 <br> Time:  2:00 p.m. <br> Courtroom: TBD |

TO DEFENDANT AND COUNTERCLAIM PLAINTIFF ZHANG YUZHEN, AND TO HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 13, 2022 at 2:00 p.m., or as soon thereafter as the matter may be heard at the above-entitled court, located at the Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612, plaintiff and counterclaim defendant The Board of Trustees of The Leland Stanford Junior University ("Stanford") will, and hereby does, move the Court to disqualify DLA Piper LLP (US) ("DLA Piper") as counsel for defendant and counterclaim plaintiff Zhang Yuzhen ("Ms. Zhang").

This Motion is made on the grounds that: (1) beginning in 2018, DLA Piper represented Stanford in certain patent prosecution matters; (2) beginning on February 15, 2022, when Ms. Zhang's counsel moved laterally to DLA Piper, DLA Piper concurrently represented Stanford in the patent prosecution matters and Ms. Zhang in this lawsuit adverse to Stanford; (3) after Stanford declined to give DLA Piper a conflict waiver and requested that DLA Piper continue to represent it in the patent prosecution matters, DLA Piper discontinued its representation of Stanford; and (4) under the "hot potato" rule, DLA Piper cannot, by dropping Stanford as a client, cure the conflict caused by its concurrent representation of Stanford and of Ms. Zhang adverse to Stanford.

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the Declarations of Yi-An Chen, Chu Chang, and Mark D. Litvack filed concurrently herewith, the [Proposed] Order lodged concurrently herewith, and such further argument as may be presented before or at the hearing on the Motion.

///

///

///

///

///

///

///

///

1          Pursuant to the Court's Standing Order – Civil, Stanford certifies that counsel for Stanford

2    and specially appearing counsel for DLA Piper have complied with the requirement that they meet

3    and confer prior to the filing of this motion.

4

5    Dated:  May 25, 2022                              MARK D. LITVACK
                                                       JEFFREY D. WEXLER
6                                                      PILLSBURY WINTHROP SHAW PITTMAN LLP

7                                                        _/s/ Mark D. Litvack_
8                                          By:          MARK D. LITVACK
                                                   Attorneys for Plaintiff and Counterclaim Defendant
9                                                  THE BOARD OF TRUSTEES OF THE LELAND
                                                   STANFORD JUNIOR UNIVERSITY and
10                                                 Counterclaim Defendant LI NANYANG

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

    A.    Stanford's Attorney-Client Relationship with DLA Piper. ........................3

    B.    The Lawsuit. ...............................................................................................4

    C.    Mr. Jacobs' Move to DLA Piper. ..............................................................4

    D.    Stanford's Rejection of DLA Piper's Request for a Conflict Waiver. .......4

    E.    DLA Piper's Termination of Its Representation of Stanford. ...................5

    F.    DLA Piper's Claim that It No Longer Had a Conflict in
        Representing Ms. Zhang Adverse to Stanford, and Its Appearance
        in This Case. ...............................................................................................8

LEGAL STANDARD .......................................................................................................10

ARGUMENT ...................................................................................................................10

I.      DLA PIPER SHOULD BE DISQUALIFIED FROM REPRESENTING MS.
       ZHANG. ...............................................................................................................10

    A.    DLA Piper Should be Disqualified Because It Concurrently
        Represented Stanford and Ms. Zhang. ....................................................10

    B.    DLA Piper Should be Disqualified Because the "Hot Potato" Rule
        Prevents DLA Piper from Dropping Stanford as a Client in Order to
        Represent Ms. Zhang Adverse to Stanford...............................................12

CONCLUSION ................................................................................................................15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## <u>Cases</u>

4

*Flatt v. Superior Court,*
    9 Cal. 4th 275 (1994)........................................................................10, 11, 12, 14

5

*Fujitsu Ltd. v. Belkin Int'l, Inc.,*
    No. 10–CV–03972–LHK, 2010 WL 5387920 (N.D. Cal. Dec. 10, 2010) ................................ 14

6

7

*In re Charlisse C.,*
    45 Cal. 4th 145 (2008)........................................................................11

8

*Merck Eprova AG v. ProThera, Inc.,*
    670 F. Supp. 2d 201 (S.D.N.Y. 2009) ........................................................14, 15

9

10

*Netlist, Inc. v. SK hynix Inc.,*
    No. 8:16-cv-01605-JLS-JCGx, 2016 WL 8905079 (C.D. Cal. Dec. 5, 2016) ........................2, 11

11

*People ex rel. Dep't of Corp. v. SpeeDee Oil Change Systems, Inc.,*
    20 Cal. 4th 1135 (1999)........................................................................10, 11

12

13

*Pour Le Bebe, Inc. v. Guess? Inc.,*
    112 Cal. App. 4th 810 (2003)........................................................................14

14

*Radcliffe v. Hernandez,*
    818 F.3d 537 (9th Cir. 2016) ........................................................................10

15

16

*State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.,*
    72 Cal. App. 4th 1422 (1999)........................................................................3, 11, 12

17

*TransPerfect Global, Inc. v. MotionPoint Corp.,*
    No. C–10–02590 CW (JCS), 2012 WL 2343908 (N.D. Cal. Jun. 20, 2012),
    *motion for relief from judgment denied,*
    2012 WL 3999869 (N.D. Cal. Sep. 11, 2012)........................................................................14

18

19

*Trimble Inc. v. PerDiemCo LLC,*
    802 Fed. App'x 556 (Fed. Cir. 2020) ........................................................................12

20

21

*Truck Ins. Exchange v. Fireman's Fund Ins. Co.,*
    6 Cal. App. 4th 1050 (1992)........................................................................2, 12, 13, 14

22

*Unified Sewerage Agency v. Jelco Inc.,*
    646 F.2d 1339 (9th Cir. 1981) ........................................................................3, 12, 14, 15

23

24

*Western Sugar Coop. v. Archer-Daniels-Midland Co.,*
    98 F. Supp. 3d 1074 (C.D. Cal. 2015)........................................................................2, 12, 14

25

26

## <u>Rules</u>

27

California Rules of Professional Conduct
    Rule 1.7........................................................................9

28

    Rule 1.7(a) ........................................................................10

Former Rule 3-310 ........................................................................................................... 13
Former Rule 3-310(B) ...................................................................................................... 13

Civil Local Rules for the Northern District of California
Rule 11-4(a)(1)  ............................................................................................................... 10

MOTION TO DISQUALIFY DLA PIPER; MEMO. OF POINTS & AUTHORITIES
Case No: 4:19-CV-02904-SBA (JCS)

4862-5355-5999

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff and counterclaim defendant The Board of Trustees of the Leland Stanford Junior University ("Stanford") respectfully asks this Court to disqualify DLA Piper LLC (US) ("DLA Piper") as counsel for defendant and counterclaim plaintiff Zhang Yuzhen ("Ms. Zhang") in this matter.  DLA Piper should be disqualified for two independent reasons, either of which, taken alone, requires disqualification: (1) following its hiring of Ms. Zhang's attorney, DLA Piper violated its ethical obligations by concurrently representing Stanford in patent prosecution matters and Ms. Zhang in this lawsuit adverse to Stanford, and it should therefore be disqualified under California's automatic disqualification rule; and (2) under the "hot potato" rule, DLA Piper's attempt to cure its ethical violation by discontinuing its representation of Stanford after Stanford declined to waive the conflict is unavailing and improper.

DLA Piper began representing Stanford in patent prosecution matters in 2018 pursuant to an engagement letter signed by the same Stanford Senior University Counsel who is in charge of this case for Stanford.  Since December 2019, Vinson & Elkins LLP had represented Ms. Zhang in this matter.  On February 15, 2022, Vinson & Elkins attorney Matthew Jacobs left the firm for DLA Piper.  On March 11, 2022, Mr. Jacobs notified counsel for Stanford that he had taken the case with him to DLA Piper.  On March 17, 2022, counsel for Stanford sent a letter to DLA Piper inquiring about its apparent conflict in representing Ms. Zhang.  Recognizing the conflict, DLA Piper on the same day requested a conflict waiver from Stanford; Stanford declined that request the next day.

On March 31, 2022, DLA Piper told Stanford that CuraSen Therapeutics, Inc. ("CuraSen") – which had licensed the patents at issue from Stanford and was responsible for paying DLA Piper's fees for the patent prosecution work – was terminating its license agreement with Stanford effective that date.  DLA Piper sought, based upon such termination, to end its representation of Stanford. Stanford told DLA Piper that it wanted the firm to continue to represent it in the patent prosecution work, stating that it would be responsible for paying DLA Piper's fees.  On April 7, 2022, DLA Piper told Stanford that it wanted to discontinue its representation of Stanford, in part because such representation created a "shadow conflict."  As a result, Stanford hired replacement counsel.

On May 2, 2022, DLA Piper sent a disengagement letter to Stanford.  On May 6, 2022, DLA Piper sent a letter to Stanford's counsel claiming that because DLA Piper is no longer representing Stanford, this matter is now governed by the rules applicable to successive representation rather than concurrent representation, and that DLA Piper now has no conflict because its representation of Ms. Zhang is not related to its prior work for Stanford.

This is not the first time DLA Piper has been down this path, nor is it the first time that DLA Piper has attempted to skirt its ethical obligations to its clients.  Rejecting this behavior, the Central District of California stated:

> At oral argument, DLA Piper protested that it would be "unfair" to disqualify the firm for three days of work for SK hynix. ***This argument is legally and factually specious***.  **California law mandates disqualification when a firm has become entangled in a concurrent client conflict not merely to protect against "specific acts of disloyalty or diminution of the quality of the attorney's representation," but rather because such conflicts jeopardize the very "integrity of the attorney-client relationship**." . . .  Indeed, under California's automatic disqualification rule, firms have been disqualified even when they performed *no* legal services during the period of concurrent representation. . . .  Further, DLA Piper's argument assumes that its representation of SK hynix would not have extended beyond the three days of work in May and June 2016.  But the overriding reason why DLA Piper performed only three days of work for SK hynix is that the firm subsequently instructed the German office not to perform any additional work so that the firm could continue to represent Netlist. . . .  Just as the "hot potato" doctrine provides that a lawyer cannot avoid automatic disqualification by abandoning a current client for a prospective one, DLA Piper cannot abruptly severe its relationship with an active client and then avoid disqualification based on the comparatively little work performed during the period of concurrent representation up to that point. . . .

*Netlist, Inc. v. SK hynix Inc.*, No. 8:16-cv-01605-JLS-JCGx, 2016 WL 8905079, *5 (C.D. Cal. Dec. 5, 2016) (bold-faced and bold-faced italicized emphasis added; internal citations omitted).

Furthermore under the "hot potato" rule, DLA Piper cannot evade the ethical prohibition as to concurrent representation of two adverse clients by terminating its relationship with one of the clients.  *See Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1056-57 (1992); *Western Sugar Coop. v. Archer-Daniels-Midland Co.*, 98 F. Supp. 3d 1074, 1084-85 (C.D. Cal. 2015).  DLA Piper's claim that its representation of Stanford has terminated for reasons wholly outside of its control is specious: Stanford asked DLA Piper to continue to represent it in the patent prosecution matters after CuraSen terminated its license agreement with Stanford, but DLA Piper would not agree to continue such representation even though it was completely within its power to

do so.  In short, DLA Piper fired Stanford; Stanford did not fire DLA Piper.  But in any event, it does not matter who initiates termination of the attorney-client relationship, *see Unified Sewerage Agency v. Jelco Inc.*, 646 F.2d 1339, 1345 n.4 (9th Cir. 1981), or for what reasons, *see State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.*, 72 Cal. App. 4th 1422, 1430-32 (1999) (concurrent representation ended because of settlement of a lawsuit).  Thus, disqualification would be required even if DLA Piper's concurrent representation ended for reasons outside of its control.

## BACKGROUND

### A.    Stanford's Attorney-Client Relationship with DLA Piper.

On August 14, 2018, Stanford and DLA Piper entered into an Engagement and Conflict Waiver Letter for Legal Services (the "Engagement Letter") pursuant to which DLA Piper was to represent Stanford in connection with patent prosecution matters.  *See* Declaration of Yi-An Chen ("Chen Decl."), ¶ 2, Ex. A.  The Engagement Letter was signed by Stanford's Senior University Counsel Yi-An Chen, who is the Stanford attorney who is in charge of this case.  *See id.*  Dr. Lisa A. Haile was the DLA Piper attorney who was primarily responsible for representing Stanford in connection with the patent prosecution matters.  *See id.*

On September 4, 2018, Stanford entered into an Exclusive (Equity) Agreement with CuraSen with regard to certain patents.  *See* Declaration of Chu Chang ("Chang Decl."), ¶ 2, Ex. A. Under that Agreement: (1) "subject to Stanford's approval, CuraSen will be responsible for patent matters"; and (2) "Stanford is the client of record for the attorney prosecuting the Licensed Patents." *Id.*, Ex. A, § 14.1, App. D.  In February 2019, Stanford, CuraSen, and DLA Piper entered into a Client and Billing Agreement in which they agreed that DLA Piper would prepare, file, and prosecute the patents licensed by Stanford to CuraSen.  *See id.*, ¶ 3, Ex. B.  That Agreement recited that Stanford "remains the client of" DLA Piper."  *See id.*, Ex. A, at 1.  The Agreement authorized DLA Piper to "interact directly with" CuraSen on patent prosecution matters, but it provided that Stanford "will be notified by [DLA Piper] prior to any substantive actions and will have final approval on proceeding with such actions."  *Id.*, Ex. A, ¶ 1.  The Agreement stated that CuraSen was responsible for paying DLA Piper's fees but indicated that Stanford would be responsible for paying those fees if CuraSen did not.  *See id.*, Ex. A, ¶ 2.

3

**B.     The Lawsuit.**

Stanford filed its Complaint [Dkt. 1] on May 24, 2019, naming Ms. Zhang as the sole defendant.  On July 30, 2019, Stanford filed its First Amended Complaint [Dkt. 15], adding Li Rui's son Fan Miao and his daughter Fan Mao as defendants.

On December 20, 2019, Mr. Jacobs and two other attorneys at Vinson & Elkins filed a Notice of Appearance [Dkt. 26] on behalf of Ms. Zhang.  Ms. Zhang filed her Answer [Dkt. 29] on January 15, 2020.  On March 17, 2020, Ms. Zhang filed her First Amended Answer and Counterclaims [Dkt. 46], naming Stanford and Ms. Li as counterclaim defendants.

**C.     Mr. Jacobs' Move to DLA Piper.**

On February 15, 2022, counsel for Stanford received an email from *The Recorder* linking to an article reporting on Mr. Jacobs' move from Vinson & Elkins to DLA Piper.  *See* Declaration of Mark D. Litvack ("Litvack Decl."), ¶ 2, Ex. A.  On the same day, counsel for Stanford sent an email to Mr. Jacobs congratulating him on his new opportunity and wishing him luck in his new endeavors.  *See id.*, ¶ 2, Ex. B.  Mr. Jacobs did not respond to that email.  *See id.*

On March 11, 2022, Mr. Jacobs sent counsel for Stanford an email from his DLA Piper account, providing his new contact information at DLA Piper and requesting a date to meet and confer with regard to a discovery dispute concerning privacy redactions by Ms. Li and Stanford. *See id.*, ¶ 3, Ex. C.  Mr. Jacobs sent a follow-up email on March 16, 2022.  *See id.*

**D.     Stanford's Rejection of DLA Piper's Request for a Conflict Waiver.**

On March 17, 2022, counsel for Stanford sent a letter to Mr. Jacobs and Dr. Haile following up on Mr. Jacobs' email of March 11, 2022 stating he would continue to represent Ms. Zhang at DLA Piper.  *See* Litvack Decl., ¶ 4, Ex. D.  Mr. Litvack stated:

> For a number of years, DLA Piper has represented Stanford, as set forth most recently in an August 14, 2018 engagement letter from Ms. Haile to Ms. Yi-An Chen, Senior University Counsel in the Office of General Counsel.

> Given the above, please advise whether DLA Piper has determined that it does not have a conflict in representing Ms. Zhang in litigation adverse to Stanford and, if so, please explain the basis for DLA Piper's belief that there is no such conflict given the above noted representation so that we may properly understand that evaluation, for on its face it does appear problematic.

4

> Your prompt attention to this is appreciated, as we need to resolve this issue and to thereafter, if appropriate, have Mr. Jacobs file papers with the Court confirming his continuing representation of Ms. Zhang, prior to scheduling the meet and confer with Mr. Jacobs, as requested by his email of March 11, 2022.

*Id.*, Ex. D.

Later on March 17, 2022, Dr. Haile sent an email to Ms. Chen requesting a conflict of waiver from Stanford to allow DLA Piper to represent Ms. Zhang in this matter:

> . . . In 2018, our client, Curasen Therapeutics, requested that we handle certain patent matters owned by Stanford and exclusively licensed to Curasen (Stanford Reference Numbers S08-306, S10-034, S11-437, S13-453, S14-103, 16- 122).  At the time, Stanford indicated that their policy required DLA Piper to engage with Stanford as a client although Curasen would control prosecution and pay the bills (see attached and note that paragraph 2 does not include representation of the Hoover Institution).

> We have a new lateral partner who has been representing Yuzen [*sic*] Zhang adverse to Stanford in a matter concerning the Hoover Institute.  I am writing to you to request a conflict waiver regarding this matter (I can send a formal waiver letter once you consider this request).
>
> . . .

> Since these matters are completely unrelated, we ask that you consider the request to waive any potential conflict of interest.  Please contact me with any questions or concerns.

*Id.*, Ex. B.  The next morning at 11:42, Ms. Chen responded to Dr. Haile's email, stating:

> As your new partner is well aware from litigation involving Stanford and Ms. Zhang in the People's Republic of China, the Hoover Institution is not a separate legal entity and is an integral part of Stanford University.  Your new partner has represented Ms. Zhang in litigation against Stanford University, which is the named party in this lawsuit, and the "Client" identified in the attached engagement letter.  Paragraph 2 clearly states that the Firm serves as legal counsel for Stanford University.

> I am familiar with the lawsuit between Ms. Zhang and Stanford University, and while I think it not necessary to correct the errors in your summary, we believe it is part of an attempt by the Chinese government to gain control of Li Rui's papers to prevent people from learning about his criticisms of the Communist Party and rewrite history.  We respectfully decline your request to waive the conflict.

*Id.*  At 11:45 a.m. on March 18, 2022, three minutes later, Dr. Haile responded, "Thank you for your timely response and we apologize for any inconvenience.  I just learned of this matter yesterday and understand Stanford's position."  *Id.*

**E.    DLA Piper's Termination of Its Representation of Stanford.**

On March 31, 2022, Dr. Haile unilaterally initiated a discussion about terminating DLA Piper's representation of Stanford by sending an email to Ms. Chen stating:

1
2
3

> In light of CuraSen Therapeutics' decision to end its licensing agreement with
> Stanford University on March 31, 2022, as conveyed to DLA Piper by CuraSen, I
> would like to speak with you about the ending of our firm's engagement with
> Stanford.

4

*Id.*, Ex. C.[1]  On April 1, 2022, Ms. Chen sent Dr. Haile an email stating:

5
6
7
8
9

> I am sorry I missed your proposed call since I just returned to work today.  This is
> news to me and I will need to discuss this with my contact at Stanford's Office of
> Technology Licensing (OTL) to understand the situation.  That being said, as the
> owner of the IP and DLA's client as described in our engagement letter, I do not
> think Curasen's termination of the license agreement should have any impact on
> DLA's representation of Stanford in this matter, except that Stanford (instead of
> Curasen) will pay for the legal fees after the license is terminated.  Accordingly,
> please continue to work with your contact at OTL so we understand the situation and
> have the information we need to make appropriate adjustments to our filing
> strategies, if any, in light of this new development.  I'll also get back to you once I
> have a chance to review this with OTL.

10

*Id.*[2]

11
12
13
14
15
16
17
18
19
20
21
22

On April 7, 2022, Dr. Haile sent Chu Chang, a Licensing Associate in Stanford's Office of Technology Licensing, a list of the patents that DLA Piper was prosecuting for Stanford.  *See* Chang Decl., ¶ 4, Ex. C.  Later that day, Ms. Chang spoke with Dr. Haile via Zoom concerning DLA Piper's representation of Stanford.  *See id.*, ¶ 5.  Dr. Haile told Ms. Chang that her partner or partners at DLA Piper wanted her to disengage from representation of Stanford because there was not much to manage in the portfolio of patents that had been licensed to CuraSen, Stanford had no other work for her, and DLA Piper's continuing work on the matter was creating what Dr. Haile called a "shadow conflict."  *See id.*  Dr. Haile walked Ms. Chang through the status of each patent in the portfolio, provided substantive advice concerning those patents, and gave her opinion on upcoming actions.  *See id.*  Ms. Chang requested a budget estimate for the next two years, and Dr. Haile followed up on April 8, 2022.  *See id.*, ¶ 5, Ex. D.

23
24
25
26
27
28

---

[1] Under Section 15.1 of the Exclusive (Equity) Agreement, CuraSen could terminate that Agreement by giving Stanford at least 30 days' written notice.  *See* Chang Decl., Ex. A, § 15.1.

[2] Ms. Chen was correct in stating that CuraSen's termination of the license agreement meant only that Stanford – rather than CuraSen – would be responsible for paying DLA Piper's fees.  The attorney-client relationship between Stanford and DLA Piper was created by the August 14, 2018 Engagement Agreement, which pre-dated – and was independent of – the February 2019 agreement among Stanford, CuraSen, and DLA Piper.  *See* Chen Decl., Ex. A; Chang Decl., Ex. B.  CuraSen's termination of its license agreement with Stanford relieved it of the obligation to pay DLA Piper's fees, leaving Stanford with the obligation to pay such fees under the Engagement Agreement.

6

1        Based on DLA Piper's refusal to continue to represent Stanford with regard to these patents

2   notwithstanding Ms. Chen's request in her April 1, 2022 email that such representation continue,

3   Stanford proceeded to find replacement counsel and to work to transition the patent work to such

4   counsel.  *See* Chen Decl., ¶ 8.  In an April 12, 2022 email to Ms. Chang, Dr. Haile stated:

5       Now that DLA's joint representation of CuraSen and Stanford regarding the patent
    matters listed above has concluded following CuraSen's decision to terminate the

6       license agreement, I wanted to follow up on our conversation on April 7 about the
    status of the patent matters related to that license agreement that DLA had been

7       handling.  When you decide which law firm you want to use among the approved
    firms that have been doing similar work for Stanford, please let me know so we can

8       send them electronic records and docket reports in connection with those patent
    families.  In particular, as we discussed, please let me know if you would like us to

9       send files and the docket report to Bozicevic, Field & Francis, who it appears
    previously handled these patent matters.  Thank you in advance.

10  
11  *Id.*, Ex. E.  At 1:27 p.m. on April 19, 2022, Dr. Haile sent Ms. Chang an email stating, "[j]ust

12  checking in on this matter."  *Id.*  At 1:31 p.m. on April 19, 2022, Ms. Chang responded with an

13  email stating, "I've reconnected with BFF and asked Pam Sherwood to take on the case."  *Id.*  At

14  1:37 p.m. on April 19, 2022, Ms. Chang sent an email to Ms. Sherwood and Dr. Haile concerning

15  the transfer of the patent cases from Dr. Haile to Ms. Sherwood.  *Id.*, Ex. F.  On April 20, 2022,

16  DLA Piper sent Ms. Sherwood an email attaching electronic documents and a status report.  *See id.*,

17  ¶ 9, Ex. F.  That email "confirmed that DLA Piper LLP (US) will no longer be acting as counsel in

18  connection with prosecution of the referenced patent applications."  *Id.*

19      In a May 2, 2022 letter emailed to Ms. Chen, Dr. Haile stated:

20      I am following up on my communications with Chu Chang on April 12 and 19, 2022
    regarding DLA Piper LLP (US)'s ("DLA Piper") prior work on the above-referenced

21      patent matters ("the Matter").  DLA Piper has completed its file transfer to Stanford
    University ("Stanford") regarding the Matter, and we understand Stanford has

22      engaged new counsel who is now handling the Matter.  In view of the earlier
    conclusion of DLA Piper's active involvement in the Matter, DLA Piper's attorney-

23      client relationship with Stanford pursuant to the parties' August 14, 2018
    engagement agreement has concluded, and the engagement agreement has

24      terminated.

25  Chen Decl., Ex. D.  In a May 4, 2022 email to Dr. Haile, Ms. Chen reiterated:

26      We appreciate your assistance as our counsel.  By the way, just so the record is clear,
    Stanford only engaged new counsel ***after*** DLA informed us that DLA had elected to

27      terminate this relationship.  We did not seek to terminate the engagement.  Thanks
    again for working with us to transfer the files to our new counsel.

28  *Id.*, Ex. E (emphasis in original).  Dr. Haile never responded to this clarification.  *Id.*, ¶ 11.

7

**F.      DLA Piper's Claim that It No Longer Had a Conflict in Representing Ms. Zhang Adverse to Stanford, and Its Appearance in This Case.**

On May 6, 2022 – 50 days after Mr. Litvack sent his March 17, 2022 letter inquiring about

DLA Piper's apparent conflict – DLA Piper partner Charles Deem sent a letter responding to Mr.

Litvack's letter.  *See* Litvack Decl., ¶ 5, Ex. E.  Mr. Deem stated:

> . . . Your letter is correct that Stanford University ("Stanford") at one time was a client of DLA Piper LLP (US) ("DLA Piper").  However, there is no conflict of interest in DLA Piper's current representation of Yuzhen Zhang.  For reasons outside of its control, DLA Piper does not presently represent Stanford, and DLA Piper's representation of Ms. Zhang in litigation relating to the Hoover Institute has nothing to do with DLA Piper's prior work for Stanford.

*Id.*, Ex. E.  Mr. Deem stated that "[t]he parties agreed that DLA Piper was to represent both

CuraSen and Stanford in connection with prosecuting patents for technology CuraSen had licensed

from Stanford ('CuraSen Matter')."  *Id.*  He further stated:

> The CuraSen Matter was the only matter DLA Piper ever worked on under the August 2018 engagement letter or Client and Billing Agreement.  CuraSen, not Stanford, largely directed the prosecution and paid DLA Piper's legal fees.  The last day on which DLA Piper billed any time to the CuraSen Matter was February 8, 2022.  As you know, Matt Jacobs joined DLA Piper on February 15, 2022.  Since we received your letter of March 17, 2022, Mr. Jacobs has performed no further work pursuant to his representation of Ms. Zhang while we reviewed the matter.
>
> On March 31, 2022—unrelated to your correspondence earlier that month—CuraSen terminated the License Agreement with Stanford.  CuraSen independently determined that it wanted to terminate the License Agreement.  That termination also operated to terminate DLA Piper's joint representation of CuraSen and Stanford.  CuraSen no longer had the rights to the technology in question, and thus DLA Piper no longer could pursue patents for that technology jointly on behalf of CuraSen and Stanford.  The entire premise of the August 2018 engagement letter was that a DLA Piper client was licensing a Stanford technology as to which DLA Piper could prosecute patents. That was no longer the case as of March 31, 2022.
>
> . . .
>
> As you can see from the above, DLA Piper's representation of Stanford has terminated for reasons wholly outside its control and wholly unrelated to Mr. Jacobs' representation of Ms. Zhang.  There is thus no concurrent representation that could give rise to a conflict, and because DLA Piper's former representation of Stanford was unrelated to Mr. Jacobs' representation of Ms. Zhang, there is no conflict arising out of DLA Piper's former representation either.  Accordingly, Mr. Jacobs will now resume his work on the matter.

*Id.*

On May 9, 2022, Ms. Zhang through DLA Piper filed a Notice of Change in Counsel's Firm

Association and Address and Notice of Appearance [Dkt. 87] that gave notice that: (1) Mr. Jacobs

1   had changed firms from DLA Piper to Vinson & Elkins; and (2) "Vinson & Elkins LLP is no longer

2   representing Ms. Zhang." *Id.*, Ex. F.

3          On May 11, 2022, Mr. Jacobs sent an email to counsel for Stanford stating, "I wanted to

4   circle back to you now that the conflict issue you raised has been addressed.  Please advise when we

5   can have a call to meet and confer about Hoover's discovery responses." *Id.*, Ex. G.

6          Later on May 11, 2022, Mr. Litvack sent a letter to Mr. Deem in response to his letter of

7   May 6, 2022.  *See id.*, ¶ 8, Ex. H.  The letter stated that, *inter alia*: (1) Mr. Deem's letter, by

8   asserting that Mr. Jacobs had not performed work for Ms. Zhang after receiving Mr. Litvack's letter

9   of March 17, 2022, conceded that Mr. Jacobs had performed work on this matter after arriving at the

10  firm on February 15, 2022; (2) notwithstanding Mr. Deem's statement that "[t]he last day on which

11  DLA Piper billed any time to the [patent prosecution] matter was February 8, 2022," DLA Piper had

12  continued to do work for Stanford on that matter until at least mid-April 2022; and (3) Mr. Deem's

13  letter was incorrect in stating that "DLA Piper's representation of Stanford has terminated for

14  reasons wholly outside its control," given that Stanford had requested DLA Piper to continue to

15  represent it in the patent prosecution matters but DLA Piper refused to do so.  *Id.*, Ex. H.  Mr.

16  Litvack's letter asserted that under these facts, DLA Piper had a conflict precluding it from

17  representing Ms. Zhang adverse to Stanford for two independent reasons: (1) its concurrent

18  representation of Stanford and Ms. Zhang from February 15, 2022 through March 17, 2022 violated

19  Cal. R. Prof. Cond. 1.7; and (2) the "hot potato" rule prevents DLA Piper, having undertaken

20  concurrent representation of Stanford and Ms. Zhang adverse to Stanford, from terminating its

21  representation of Stanford and then arguing that the conflict issue had been resolved.  *See id.*  On

22  May 13, 2022, Mr. Litvack sent a follow-up email with additional authority.  *See id.*, ¶ 12, Ex. I.

23         On May 16, 2022, Matthew S. Kahn of Gibson Dunn notified Mr. Litvack that his firm had

24  been retained by DLA Piper to represent it on the conflict issue.  *See id.*, ¶ 13, Ex. J.  On May 18,

25  2022, counsel for Stanford met and conferred with Mr. Kahn.  *See id.*, ¶ 15.  The parties were

26  unable to reach agreement on the conflict issue.  *See id.*

27  ///

28  ///

1

**LEGAL STANDARD**

2
This Court's Civil Local Rules require attorneys to "comply with the standards of

3
professional conduct required of members of the State Bar of California." Civ. L.R. 11-4(a)(1).  The

4
Ninth Circuit has recognized that, where a district court has adopted such rules, "California law

5
governs questions of conflicts of interest and disqualification."  *Radcliffe v. Hernandez*, 818 F.3d

6
537, 541 (9th Cir. 2016).  The decision to disqualify counsel is within the trial court's discretion,

7
limited by applicable legal principles.  *See People ex rel. Dep't of Corp. v. SpeeDee Oil Change*

8
*Systems, Inc.*, 20 Cal. 4th 1135, 1143-44 (1999).

9

**ARGUMENT**

10
**I.**   **DLA PIPER SHOULD BE DISQUALIFIED FROM REPRESENTING MS. ZHANG.**

11
**A.**   **DLA Piper Should be Disqualified Because It Concurrently Represented Stanford and Ms. Zhang.**

12

13
By stating that Mr. Jacobs joined DLA Piper on February 15, 2022 and that "[s]ince we

14
received your letter of March 17, 2022, Mr. Jacobs has performed no further work pursuant to his

15
representation of Ms. Zhang while we reviewed the matter," Litvack Decl., Ex. E, Mr. Deem's letter

16
concedes that Mr. Jacobs performed work on this matter while at DLA Piper – as is indisputable,

17
given that Mr. Jacobs sent counsel for Stanford emails on March 11, 2022 and March 16, 2022

18
requesting to meet and confer with regard to a discovery dispute in this matter adverse to Stanford at

19
a time when DLA Piper was definitively representing Stanford.  *See id.*, Ex. C.

20
DLA Piper's admitted representation of Ms. Zhang adverse to Stanford during the period

21
between February 15, 2022 and March 17, 2022 violated Cal. R. Prof. Cond. 1.7(a), which provides,

22
"[a] lawyer shall not, without informed written consent* from each client and compliance with

23
paragraph (d), represent a client if the representation is directly adverse to another client in the same

24
or a separate matter."  *Id.*  Mr. Deem's letter concedes that DLA Piper was continuing to represent

25
Stanford until at least March 31, 2022.  *See id.*, Ex. E.  In fact, DLA Piper continued to represent

26
Stanford as its counsel until April 20, 2022.  *See* Chang Decl., ¶¶ 4-8, Exs. C-F.

27
Attorneys owe current clients a duty of ***undivided*** loyalty to avoid undermining public

28
confidence in the legal profession and the judicial process.  *See Flatt v. Superior Court*, 9 Cal. 4th

10

275, 284 (1994).  When a law firm simultaneously represents clients who have conflicting interests, with few exceptions, "disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other." *SpeeDee Oil*, 20 Cal. 4th at 1147.  This strict *per se* rule recognizes that a client cannot be expected to sustain trust and confidence in his or her counsel who is also representing the client's adversary in litigation.  *See In re Charlisse C.*, 45 Cal. 4th 145, 160 (2008) (quoting *Flatt*, 9 Cal. 4th at 285).

*State Farm Mut. Auto. Ins. Co.*, 72 Cal. App. 4th at 1430-32, involved a circumstance like that DLA Piper claims to be present here – "there existed a period of time during which [the law firm] was simultaneously representing clients with adverse interests," but the firm's representation of the client seeking disqualification (Federal) ceased other than by the firm's termination of the representation (in that case, a settlement ended the case in which the firm was representing Federal). *Id.* at 1431.  The court started from the premise that "the attorney cannot avoid the automatic disqualification rule applicable to concurrent representation by unilaterally converting a present client into a former client prior to the hearing on the motion for disqualification."  *Id.* (citing *Truck Ins. Exchange*, 6 Cal. App. 4th at 1057).  The court found that "the fact that the . . . case [in which the law firm represented Federal] happened to settle before the disqualification motion was heard should not absolve [the firm] from its ethical obligations toward Federal."  *Id.* at 1432-33 ("although this fortuitous settlement acted to sever [the law firm's] relationship with its preexisting client, it did not remove the taint of a three-month concurrent representation").  The court applied the mandatory disqualification rule even though the concurrent representation had ceased due to settlement of the lawsuit in which the firm represented Federal, finding it "inappropriate to consider the substantial relationship test." *Id.* at 1433 (citing *Flatt*, 9 Cal. 4th at 286). *See Netlist, Inc.*, 2016 WL 8905079, *4-6, 8 (DLA Piper disqualified where it claimed that it concurrently represented adverse clients for only three days before terminating relationship).

Thus, DLA Piper violated its ethical obligations to Stanford during the time that it was concededly doing work for both Stanford and Ms. Zhang, without Stanford's informed written

1  consent to this concurrent representation.  Based on this ground alone, DLA Piper is subject to

2  disqualification, without the need to reach the "hot potato" rule discussed in Part I.B below.

3      **B.    DLA Piper Should be Disqualified Because the "Hot Potato" Rule Prevents
           DLA Piper from Dropping Stanford as a Client in Order to Represent Ms.**

4           **Zhang Adverse to Stanford.**

5          DLA Piper asserts it is no longer concurrently representing Stanford and Ms. Zhang and that

6  the case is therefore subject to the more lenient rule applicable to successive representation.  This

7  argument is wrong and disregards the "hot potato" rule: "a law firm that knowingly undertakes

8  adverse concurrent representation may not avoid disqualification by withdrawing from the

9  representation of the less favored client before hearing." *Truck Ins. Exchange*, 6 Cal. App. 4th at

10  1056-57.  *See, e.g.*, *Flatt*, 9 Cal. 4th at 288 ("[s]o inviolate is the duty of loyalty to an existing client

11  that not even by withdrawing from the relationship can an attorney evade it") (discussing *Truck Ins.*

12  *Exchange*, 6 Cal. App. 4th at 1058-59); *Western Sugar Coop.*, 98 F. Supp. 3d at 1084-85 ("[t]he 'hot

13  potato rule' bars an attorney and law firm from curing the dual representation of clients by

14  expediently severing the relationship with the preexisting client") (citing *Flatt*, 9 Cal. 4th at 288)

15  (footnote omitted).  *See also Trimble Inc. v. PerDiemCo LLC*, 802 Fed. App'x 556, 557-58 (Fed.

16  Cir. 2020) (current Rule 1.7(a) reflects a long-standing standard, set forth in *Flatt*, *Truck Ins.*

17  *Exchange*, and *Unified Sewerage Agency*, precluding a law firm from avoiding a conflict by

18  dropping a concurrently represented client) (applying California law).  "[T]he 'hot potato rule'

19  applies regardless of the attorney's reasons for terminating the relationship." *Western Sugar Coop.*,

20  98 F. Supp. 3d at 1084-85 (citing *Flatt*, 9 Cal. 4th at 289).

21          The facts here fall squarely within the holdings of *Truck Ins. Exchange*, 6 Cal. App. 4th at

22  1055-57, that: (1) a law firm violates the ethical rules by assuming concurrent representation of two

23  clients with conflicting interests; and (2) the law firm cannot cure the conflict by thereafter

24  withdrawing from representation of one of the two clients.  In *Truck Ins. Exchange*, the law firm

25  Crosby, Heafey, Roach & May ("Crosby") had been engaged by plaintiff Truck Insurance Exchange

26  ("Truck") to represent it in a lawsuit against Fireman's Fund Insurance Company ("FFIC").  *See id.*

27  at 1052-53.  For several months, Crosby had been defending Fireman's Fund Credit Union

28  ("FFCU") – an entity related to FFIC – in two wrongful termination suits, and Crosby conceded that

12

1   FFIC was its client for conflicts purposes.  *See id.* at 1053.  Crosby asked FFIC to consent to

2   concurrent representation or to allow Crosby to withdraw from its representation of FFCU, but

3   "FFIC objected to the concurrent representation, did not provide written consent, and stated its

4   desire to have Crosby continue as its attorney in the wrongful termination cases."  *Id.* at 1053-54.

5   Crosby moved to withdraw as FFCU's counsel in the wrongful termination cases, and FFCU

6   obtained replacement counsel in those cases.  *See id.* at 1054.  FFIC moved "to disqualify Crosby

7   from representing Truck against FFIC in this case while it concurrently represented FFIC in the

8   wrongful termination cases" because a law firm may not sue a present client without that client's

9   written consent, which FFIC had not provided.  *Id.*  The court found that the applicable rule was

10  Cal. R. Prof. Cond. 3-310, effective May 27, 1989, which "provide[d] in relevant part: '(B) A

11  member shall not concurrently represent clients whose interests conflict, except with their informed

12  written consent ....'"  *Id.* at 1055 (quoting Cal. R. Prof. Cond. 3-310(B)).  The court found that Rule

13  3-310(B) was violated on its face:

> The undisputed facts before the trial court established that Crosby, knowing
14  that it was representing FFIC in the wrongful termination cases, nevertheless agreed
   to begin representing Truck against FFIC in the insurance coverage case.  In doing
15  so, Crosby did not obtain the informed written consent of FFIC, and proceeded with
   its representation of Truck after such consent was explicitly denied.  There was,
16  therefore, concurrent representation of clients whose interests conflicted, with no
   informed written consent.
17

18  *Id.* at 1056-57.

19      In *Truck Ins. Exchange*, Truck made the same argument made by DLA Piper here – FFIC

20  was Crosby's former client, and disqualification would be proper only if "Crosby's former

21  representation of FFIC in those cases was substantially related to the present case so as to give

22  Crosby access to confidential information now helpful to Truck."  *Id.* at 1054.  The court disagreed:

> Since Crosby unquestionably owed a duty of loyalty and commitment to
23  FFIC, was that duty satisfied by Crosby's withdrawal of representation of FFIC
   before the hearing on the motion to disqualify?  Simply put, ***may the automatic***
24  ***disqualification rule applicable to concurrent representation be avoided by***
   ***unilaterally converting a present client into a former client prior to hearing on the***
25  ***motion for disqualification?***  *We* answer each question in the negative and ***hold,***

26

27  ///

28  ///

4862-5355-5999

***consistent with all applicable authority, that a law firm that knowingly undertakes adverse concurrent representation may not avoid disqualification by withdrawing from the representation of the less favored client before hearing.*** . . .

*Id.* at 1057 (emphasis added) (citations omitted).  *See Flatt*, 9 Cal. 4th at 288 ("the 'automatic disqualification rule applicable to concurrent representation [cannot] be avoided by unilaterally converting a present client into a former client prior to hearing on the motion for disqualification'"); *TransPerfect Global, Inc. v. MotionPoint Corp.*, No. C–10–02590 CW (JCS), 2012 WL 2343908, *9-10 (N.D. Cal. Jun. 20, 2012) (Spero, J.) ("'a lawyer may not avoid the automatic disqualification rule applicable to concurrent representation of conflicting interests by unilaterally converting a present client into a former client'") (quoting *Pour Le Bebe, Inc. v. Guess? Inc.*, 112 Cal. App. 4th 810, 822 (2003)), *motion for relief from judgment denied*, 2012 WL 3999869 (N.D. Cal. Sep. 11, 2012); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10–CV–03972–LHK, 2010 WL 5387920, *5-7 (N.D. Cal. Dec. 10, 2010) (law firm subject to *per se* disqualification when it concurrently represented Netgear and Fujitsu, then withdrew from representation of Netgear and continued to represent Fujitsu adverse to Netgear).  *See also Western Sugar Coop.*, 98 F. Supp. 3d at 1084-85 ("The 'hot potato rule' bars an attorney and law firm from curing the dual representation of clients by expediently severing the relationship with the preexisting client. . . .  Accordingly, the automatic disqualification rule applicable to concurrent representations cannot be avoided by unilaterally converting a present client into a former client. . . .  Additionally, the 'hot potato rule' applies regardless of the attorney's reasons for terminating the relationship. . . .  The 'hot potato rule' does not distinguish circumstances in which counsel drops a client to represent a new client, from the circumstances present here.  Rather, the doctrine is grounded in an attorney's undivided duty of loyalty, which was unquestionably breached by SPB simultaneously representing adverse clients.") (citing *Flatt*, 9 Cal. 4th at 284, 289).

In *Unified Sewerage Agency*, 646 F.2d 1339, the Ninth Circuit rejected a party's argument that a case should be analyzed in terms of former representation rather than concurrent representation because the client seeking disqualification had dismissed the conflicted law firm from its employ.  *See id.* at 1343, 1345 n.4.  The Ninth Circuit explained, "This standard continues even though the representation ceases prior to filing of the motion to disqualify.  If this were not the

14

case, the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client." *Id.* at 1345 n.4. *See Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 209 (S.D.N.Y. 2009) ("[T]he rule requiring a conflict to be judged by the concurrent representation standard even after representation has ended should not turn on whether representation is terminated by conflicted counsel or by the client.  Otherwise, counsel could simply persist in dual representation until one client or the other capitulates.").

Thus, DLA Piper cannot avoid the prohibition against concurrent representation on the ground that after Stanford declined to waive the conflict, it converted Stanford into a former client by declining Stanford's request that DLA Piper continue to represent it in the patent prosecution matters.  Indeed, under *Unified Sewage Agency*, the prohibition against concurrent representation would have been applicable even if Stanford had discharged DLA Piper (which it did not). Accordingly, the Court should disqualify DLA Piper from continuing to represent Ms. Zhang in this matter.

## **CONCLUSION**

Stanford respectfully asks the Court to disqualify DLA Piper from representing Ms. Zhang.

Dated:  May 25, 2022

MARK D. LITVACK
JEFFREY D. WEXLER
PILLSBURY WINTHROP SHAW PITTMAN LLP

By:  */s/ Mark D. Litvack*
　　　　　MARK D. LITVACK
Attorneys for Plaintiff and Counterclaim
Defendant THE BOARD OF TRUSTEES OF
THE LELAND STANFORD JUNIOR
UNIVERSITY and Counterclaim Defendant LI
NANYANG

15