UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Plaintiff,<br><br>vs.<br><br>ZHANG YUZHEN, et al.,<br><br>Defendants. | Case No: 19-cv-02904 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS** |
| AND RELATED COUNTERCLAIM. | |

The Board of Trustees of the Leland Stanford Junior University ("Stanford") brings the instant quiet title action against Zhang Yuzhen ("Ms. Zhang"). Ms. Zhang brings various counterclaims against Stanford and Li Nanyang ("Ms. Li," and together with Stanford, "Counter-Defendants"). Pending is Counter-Defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to Ms. Zhang's second, seventh, eighth, and ninth counterclaims. The matter is suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b). For the reasons stated below, the motion is granted in part and denied in part.

I.   **BACKGROUND**

   A.   **FACTUAL ALLEGATIONS**[1]

Li Rui was a prominent Chinese political figure and outspoken critic of the leaders of the Communist Party of China until his death on February 16, 2019. First Am. Compl. ("FAC") ¶ 12, Dkt. 15; see also id. ¶¶ 13-15. Li Rui created personal diaries from at least

---

[1] The parties are familiar with the underlying facts; only those matters pertinent to resolution of the instant motion are recited herein.

1938 to 2019.  Id. ¶ 16.  He also maintained letters, photographs, and other materials, including but not limited to, diaries created by his first wife, Fan Yuanzhen, a diary created by both Li Rui and Fan Yuanzhen, and correspondence between Li Rui and Fan Yuanzhen (the physical copies of these materials and Li Rui's personal diaries, exclusive of the intellectual property rights thereto, are referred to as the "Materials").  Id. ¶ 17.

In February 1989, Li Rui visited Stanford and its Hoover Institution ("Hoover").  Id. ¶ 18.[2]  During the visit, he was shown some of Hoover's China Collection.  Id.  According to Stanford, due to Hoover's reputation for its holdings of twentieth century Chinese historical materials, Li Rui gave the Materials to his daughter, Ms. Li, beginning around early 2014, to transfer ownership of the same to Stanford.  Id. ¶ 20.[3]  He instructed Ms. Li to take the Materials from China to the United States to gift them permanently to Stanford.  Id.  Ms. Li delivered the Materials to Stanford between March 3, 2014 and July 31, 2018, and executed agreements transferring ownership of the same to Stanford between March 3, 2014 and February 13, 2019.  Id. ¶¶ 21-22.

Li Rui was married to his second wife, Ms. Zhang, from 1979 through his death on February 16, 2019.  FAC ¶ 26; First Am. Answer & Countercl. ("Countercl.") ¶ J, Dkt. 46.  The Materials constitute original copies of diaries, letters, work notes, and other manuscripts prepared by Li Rui over the course of his life, including the 40-year period during which he and Ms. Zhang were married.  Id. ¶ M.  Ms. Zhang contends that, in addition to providing accounts of significant events in Chinese history, the Materials "also reflect deeply personal and private affairs of [her and Li Rui's] life together, described in, among other things, diary entries, letters, and poetry."  Id. ¶ N.  According to Ms. Zhang, Li

---

[2] Hoover is a public policy research center devoted to the study of politics, economics, and political economy—both domestic and foreign—as well as international affairs.  FAC ¶ 5.  The Library & Archives at Hoover is dedicated to documenting war, revolution, and peace in the twentieth and twenty-first centuries.  Id. ¶ 7.  It includes the China Collection, which is part of the larger East Asia Collection.  Id. ¶¶ 8-9.

[3] Ms. Li is one of three children Li Rui had with Fan Yuanzhen; the others are Fan Mao and Fan Miao.  FAC ¶¶ 25, 41.

Rui intended that she would take ownership of the Materials after his death, and that any publication or public display of their contents would be made at her sole discretion. Id. ¶ P. Despite Li Rui's intentions, Ms. Li, "secreted" the Materials out of China "at a time when she stood in a fiduciary position to [him]." Id. ¶ Q. It is alleged that Ms. Li was an employee or agent of Stanford when she took the Materials. Id. ¶ R.

Li Rui died, intestate, in China. FAC ¶ 27; Countercl. ¶ K. Shortly after his death, on March 20, 2019, Ms. Zhang sent a letter to Stanford, through her counsel, asserting her rightful claim to ownership of the Materials. Id. ¶ W. On April 2, 2019, Ms. Zhang filed an inheritance action against Ms. Li in the Xicheng District People's Court of Beijing of the People's Republic of China, Zhang Yuzhen et al. v. Li Nanyang, (2019) J010MC No. 17194 (the "Chinese Proceeding"). Id. ¶ X & Intro. Ms. Zhang notified Stanford of the Chinese Proceeding by letter dated April 5, 2019. Id. ¶ Z; FAC ¶ 28. Stanford thereafter filed the instant action. Countercl. ¶¶ AE-AF; FAC ¶ 30.

On November 20, 2019, a civil judgment issued in the Chinese Proceeding, awarding Ms. Zhang ownership of the Materials and ordering Stanford and Hoover to transfer possession of the same to her within 30 days. Countercl. ¶ AJ. According to Ms. Zhang, Stanford and Hoover were named as third parties and eligible to appear in the Chinese Proceeding but elected not to do so. Id. ¶¶ Y, AJ. Stanford denies that it elected not to participate in the Chinese Proceeding, alleging, among other things, that it was added as a third party in the judgment without any notice or opportunity to participate. Answer ¶¶ Y, AE, AJ, Dkt. 54. Stanford retains possession of the Materials. Countercl. ¶ AK.

On April 23, 2019, Stanford held a panel discussion regarding Li Rui. Id. ¶ AB. At its conclusion, the Materials were displayed for attendees to view. Id. During the discussion, Ms. Li stated that Stanford had reproduced, photocopied, transcribed, or otherwise copied the Materials for "ease of access." Id. Thereafter, on July 12, 2019, Stanford announced that the Materials were being made available to researchers. Id. ¶ AG. On February 3, 2020, Hoover reopened its Library & Archives reading room, which had been closed for construction. Id. ¶ AL. As a result, archived documents, including the

Materials, were made "more widely available." Id.  According to Ms. Zhang, this already led to "multiple individuals" accessing the Materials in the short time between the reopening of the reading room and the filing of her Counterclaim.  Id.  Continued publication of the Materials has caused and continues to cause Ms. Zhang personal embarrassment and emotional distress.  Id. ¶ AN.

### B.   PROCEDURAL HISTORY

Stanford brings a single claim for Quiet Title under California Code of Civil Procedure §§ 760.010 et seq.[4]  Ms. Zhang brings counterclaims for: (1) Copyright Infringement, against Counter-Defendants; (2) Public Disclosure of Private Facts, against Counter-Defendants; (3) Intentional Infliction of Emotional Distress, against Counter-Defendants; (4) Conversion, against Ms. Li; (5) Aiding and Abetting Conversion, against Stanford; (6) Civil Conspiracy to Commit Conversion, against Stanford; (7) Breach of Fiduciary Duty, against Ms. Li; (8) Aiding and Abetting Breach of Fiduciary Duty, against Stanford; (9) Conspiracy to Commit Breach of Fiduciary Duty, against Stanford; (10) Unjust Enrichment, against Counter-Defendants; and (11) Enforcement of Chinese Judgment.  Counter-Defendants move for judgment on the pleadings under Rule 12(c) with respect to Ms. Zhang's second, seventh, eighth, and ninth counterclaims.  Dkt. 64.

## II.   LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Because a motion under Rule 12(c) is "functionally identical" to a motion to dismiss under Rule 12(b), the same standards apply.  Dworkin v. Hustler Mag., Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).  A court must accept all factual allegations in the challenged pleading as true and construe them in the light most favorable to the non-moving party.  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009); Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542,

---

[4] In addition to Ms. Zhang, Stanford names Fan Miao and Fan Mao as defendants. They have not appeared, and the Clerk has entered their defaults.  Dkt. 43, 63.

1550 (9th Cir. 1989) ("For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Fleming, 581 F.3d at 925.

## III.  DISCUSSION

Counter-Defendants move for judgment on the pleadings with respect to Ms. Zhang's second counterclaim for public disclosure of private facts and her seventh through ninth counterclaims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy to commit breach of fiduciary duty.

### A.  PUBLIC DISCLOSURE OF PRIVATE FACTS

Under California law, the elements of a claim for public disclosure of private facts are: "'(1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate public concern.'" Taus v. Loftus, 40 Cal. 4th 683, 717 (2007) (quoting Shulman v. Grp. W Prods., Inc., 18 Cal. 4th 200, 214 (1998)).[5] At issue here is the first element—public disclosure. Counter-Defendants argue that Ms. Zhang has not alleged the type of publication necessary to support a claim. Specifically, they argue that "making documents available to researchers at an archive" does not constitute such a publication. Mot. at 8.

The elements of a cause of action for publication of private facts follow the Restatement. Shulman, 18 Cal. 4th at 214; see also Hill v. Nat'l Collegiate Athletic Ass'n,

---

[5] Counter-Defendants argue California law applies because that is where the alleged disclosure took place. Ms. Zhang opposes the motion largely based on the application of California law. However, she also makes a cursory argument that Chinese law governs because her place of residence has the greatest interest in the matter. Without identifying any other law that may apply, she also asserts that the disclosure did not take place solely in California because the Materials may have been viewed by persons residing elsewhere. Even applying California law, Counter-Defendants do not prevail on their motion as to this counterclaim. For that reason, the choice-of-law dispute need not be resolved at this time.

7 Cal. 4th 1, 24 (1994) (noting California common law on privacy torts generally follows the Restatement). As is pertinent here, the Restatement provides:

> The form of invasion of the right of privacy covered in this Section depends upon publicity given to the private life of the individual. "Publicity," as it is used in this Section, differs from "publication," as that term is used in § 577 in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.
>
> Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.

Rest. (2d) of Torts § 652D, comment a (1977).

In arguing that the alleged disclosure is not actionable, Counter-Defendants emphasize the proposition that disclosure must be to the public at large and not a single person or even a handful of people. However, in asserting that viewing of the Materials by researchers at Hoover is insufficient to satisfy this requirement, they fail to contend fully with either the relevant law or Ms. Zhang's allegations. As stated above, the critical distinction "is one between private and public communication." Rest. (2d) of Torts § 652D, comment a. Thus, while the number of persons a disclosure reaches is relevant, the focus is not on a numerical threshold, but rather, on the probability of it becoming a matter of public knowledge. See Doe v. John F. Kennedy Univ., No. C-13-01137 DMR, 2013 WL 4565061, at *11 (N.D. Cal. Aug. 27, 2013) (noting no California case has defined the number of people necessary to justify a finding of publicity). Counter-Defendants do not show that the facts alleged by Ms. Zhang are insufficient to make such a showing.

Ms. Zhang alleges that, in addition to displaying the Materials for attendees at a panel, Hoover has copied the Materials for "ease of access" and made them available for

viewing at its recently reopened reading room. Ms. Zhang further alleges that, as a result, "multiple people" viewed the Materials in a short period (i.e., approximately six weeks). For purposes of the instant motion, this constitutes a public disclosure. Cf. Opperman v. Path, Inc., 87 F. Supp. 3d 1018, 1062 (N.D. Cal. 2014) (dismissing claim where it was alleged that the defendant had transmitted address books in an unencrypted manner that allowed them to be intercepted by third parties, but where there was no allegation that an interception occurred). Questions regarding the number of persons who have viewed the Materials and the likelihood of matters contained therein becoming public knowledge are "inappropriate for resolution at the pleading stage." John F. Kennedy Univ., 2013 WL 4565061, T *11 (declining to dismiss claim where it was alleged that the plaintiff's instructor forced her to reveal details regarding her disability to the class).

The authorities relied upon by Counter-Defendants—Bearden v. Alameda County, No. 19-CV-04264-SI, 2020 WL 3791645 (N.D. Cal. July 7, 2020), and Hassan v. Facebook, Inc., No. 19-CV-01003-JST, 2019 WL 3302721 (N.D. Cal. July 23, 2019)—do not counsel in favor of a different result. In Bearden, the court dismissed a claim for lack of a "sufficiently public" disclosure (among other grounds), where it was alleged that, in the presence of a few colleagues, the defendant had yelled that the plaintiff should be fired and investigated by internal affairs. 2020 WL 3791645, at *3. While a disclosure to a few persons within a workplace may not be sufficiently public, the disclosure at issue here is not contained within Stanford; rather, the Materials are made available to persons outside the institution. Additionally, while the disclosure in Bearden was an isolated event, the disclosure here is ongoing. Hassan is also distinguishable. In that case, the court dismissed a claim where it was alleged that Facebook had sold "known and unknown companies" access to the plaintiffs' private data. 2019 WL 3302721, at *3. As noted by Ms. Zhang, the disclosure in Hassan arguably was not "public," as that term is used in § 652D of the Restatement, given that the value of the data depended on it remaining private among Facebook's paying customers. The nature of the disclosure at issue here is quite different. Accordingly, Counter-Defendants' motion is denied as to the second counterclaim.

### B. BREACH OF FIDUCIARY DUTY

Counter-Defendants move to dismiss Ms. Zhang's fiduciary duty claims on the ground that, as a matter of Chinese law, the claims were personal to Li Rui and did not survive his death. In support of this argument, Counter-Defendants present the declaration of Xiaolin Zhou, an expert on Chinese law. Dkt. 64-1 ("Zhou Declaration").[6]

The Zhou Declaration provides that, prior to January 1, 2021, the Law of Succession of the People's Republic of China (the "Law of Succession") governed inheritance. Zhou Decl. ¶ 15. Thereafter, the Civil Code of the People's Republic of China (the "Civil Code") replaced the Law of Succession. Id. Both Li Rui's death and Ms. Li's alleged breach of fiduciary duty occurred prior to the effective date of the Civil Code; survival of the fiduciary claims therefore is governed by the Law of Succession. Id. ¶ 17. Even so, adjudicative reasoning can be made according to provisions of the Civil Code. Id.[7]

Under Article 3 of the Law of Succession, "[e]state denotes the lawful property of a citizen owned by him personally at the time of his death, which consists of: (1) his income; (2) his houses, savings and articles of everyday use; (3) his forest trees, livestock and poultry; (4) his cultural objects, books and reference materials; (5) means of production lawfully owned by him; (6) his property rights pertaining to copyright and patent rights; and (7) his other lawful property." Id. ¶ 18, Ex. C-2.

"Law of Marriage, Family and Succession," published by the University Press of China University of Political Science and Law in 2012, expounds on the meaning of estate for purposes of Article 3. Id. ¶ 27, Ex. H-2. It explains that "[e]state denotes solely the

---

[6] The parties agree that Ms. Zhang's counterclaims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and conspiracy to commit breach of fiduciary duty are governed by the law of the People's Republic of China.

[7] Article 4 of the Several Provisions of the Supreme People's Court on the Retroactivity in the Application of the Civil Code of the People's Republic of China provides: "For cases of civil disputes arising from the legal facts occurring before the Civil Code comes into force, where the laws or judicial interpretations in force at that time only set forth fundamental provisions while the Civil Code set forth specific provisions, the laws or interpretations in force at that time shall apply, but adjudicative reasoning can be made according to the specific provisions of the Civil Code. Zhou Decl., ¶ 16, Ex. B-2.

personal lawful property left by the decedent and is a kind of property in nature." Id. It further explains: "Estate is certain lawful property that can be transferred to others legally, and is restrictive in nature. The decedent's property that can be transferred to another person as an estate is limited to civil property, such as ownership, creditor's rights, and debts, etc. The rights and obligations of the decedent arising from the personality right and personal relationships during his/her lifetime shall not be regarded as estate." Id.

Based on the foregoing, as well as a discussion of relevant provisions of the Civil Code, id. ¶¶ 19-25, Counter-Defendants' expert opines that private property subject to inheritance does not include an unasserted claim for breach of fiduciary duty. Id. ¶¶ 18, 20.[8] He thus concludes that the fiduciary duty claims brought by Ms. Zhang were personal to Li Rui and did not survive his death. Id. ¶¶ 13, 28-31.

Ms. Zhang does not challenge directly Counter-Defendants' argument that the cited provisions of Chinese law do not provide standing to bring claims for breach of fiduciary duty on behalf of Li Rui. Instead, she challenges Counter-Defendants' motion on three ancillary grounds: (1) the reliability of the Zhou Declaration; (2) the applicability of the Civil Code; and (3) the potential for standing under other provisions of Chinese law. In support of these arguments, Ms. Zhang presents the declaration of her expert, Professor Jacques DeLisle. Dkt. 73-1 ("DeLisle Declaration"). Her arguments are addressed in turn.

First, Ms. Zhang argues the Zhou Declaration is not a reliable source of Chinese substantive law because Xiaolin Zhou has not been disclosed or qualified as an expert in Chinese law under Rule 26(a)(2). As rightly noted by Counter-Defendants, however, "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence" in making

---

[8] Because resolution of the instant motion does not depend on any application of the Civil Code, a detailed discussion of its provisions and interpretation is omitted. In short, the Zhou Declaration opines that Article 124 of the Civil Code maintains the same definition of "lawful personal property" as Article 3 of the Law of Succession, while Article 1122 provides further explanation and illustration as to that which is not inheritable by nature. Zhou Decl. ¶¶ 22, 25.

determinations of foreign law.  Fed. R. Civ. P. 44.1; see also Universal Trading & Inv. Co. v. Kiritchenko, NO. C-99-03072 MMC (EDL), 2007 WL 2141296, at *4 (N.D. Cal. July 25, 2007) (finding Rule 44.1 does not require compliance with Rule 26(a)(2) where a declaration or testimony is provided "only to assist the court in making determinations of foreign law").  This challenge to the Zhou Declaration therefore is without merit.[9]

Second, Ms. Zhang argues the Civil Code cannot be applied retroactively for adjudicative reasoning in this case.  As stated above, provisions of the Civil Code may be applied retroactively for adjudicative reasoning if they are more specific than the provisions of the law in effect at the time the claim accrued.  See Zhou Decl. ¶ 16; DeLisle Decl. ¶¶ 35-36.  According to Ms. Zhang's expert, the relevant provisions of the Civil Code are not more specific than the Law of Succession, and thus, do not qualify for retroactive consideration.  DeLisle Decl. ¶¶ 37-38.  Even assuming that the Civil Code cannot be relied upon for adjudicative reasoning, however, Ms. Zhang offers no rebuttal to Counter-Defendants' argument regarding Article 3 of the Law of Succession, which indisputably governs.  As rightly noted by Counter-Defendants, the only authority cited by either party provides that the rights of the decedent arising from personal relationships during his/her lifetime shall not be regarded as estate under Article 3.  Thus, Counter-Defendants have shown that, under the Law of Succession, the fiduciary duty claims were not inheritable.

On the issue of retroactivity, one further matter warrants discussion.  Ms. Zhang asserts that Counter-Defendants' "ignore" the judgment in the Chinese Proceeding, and "[do] not even attempt to suggest why this Court is better positioned to interpret Chinese law than the court in China that already adjudicated Hoover's claim and found for [her]."  Opp'n at 12.  She further argues there can be no retroactivity under Chinese law where, as here, a final judgment (i.e., the Chinese judgment) was entered before the Civil Code took

---

[9] Insofar as the challenge to the Zhou Declaration also raises questions as to Xiaolin Zhou's qualifications to render an opinion on matters of Chinese law, it is likewise without merit.  Xiaolin Zhou appears well qualified to opine on the issues presented.  See Zhou Decl. ¶¶ 2-12 & Ex. A.  Although Ms. Zhang finds fault in the Zhou Declaration, which she attributes to a "lack of expertise," Opp'n at 11, Dkt. 73, this assertion is baseless.

effect.  Id.  The DeLisle Declaration, in turn, devotes considerable attention to the Chinese Proceeding, concluding that the Zhou Declaration "is curiously silent about the Chinese Court judgment…, which looms large over this dispute."  DeLisle Decl. ¶ 57.  This discussion of the Chinese Proceeding is misguided.  The Chinese Proceeding concerned Ms. Zhang's claim to ownership of the Li Materials.  See Opp'n at 12; DeLisle Decl. ¶ 17.  It did not address the fiduciary duty claims at issue here, and there is no final judgment as to these claims.  Consequently, the Chinese Proceeding has no bearing on the questions presented in this motion.  It is not the Zhou Declaration's silence on this matter, then, which is curious, but rather, the emphasis placed on it by Ms. Zhang and her expert.

Lastly, Ms. Zhang argues that the Zhou Declaration ignores other provisions of Chinese law that "could support" standing.  Opp'n at 13.  This argument is lacking, however, as she only vaguely refers to laws that might support standing to bring other types of claims.[10]  Specifically, Ms. Zhang notes that: (1) Chinese tort law permits close relatives to bring something akin to a wrongful death claim on behalf of a deceased victim; (2) under Article 4 of the Law of Succession, the rights, personal benefits, and income deriving from an individual or personal contract can be inherited; and (3) under Article 994 of the Civil Code, a close relative can bring suit where the "personality rights" (i.e., rights to privacy, name, image, reputation, and honor) of the decedent are infringed, even though such rights are not themselves inheritable.  Because Ms. Zhang does not bring claims for wrongful death, breach of contract, or infringement of Li Rui's personality rights, however, these provisions are of no aid to her.  Accordingly, Counter-Defendants' motion is granted with respect to the seventh through ninth counterclaims.

---

[10] Ms. Zhang's inability to pinpoint a specific provision of law conferring standing to bring her fiduciary duty claims may be attributable, in part, to her expert's assertion that the claims may not have a firm basis in Chinese law.  See DeLisle Decl. ¶ 56 (identifying one or more provisions that "might provide a basis for a cognizable claim under Chinese law that is, in essence, a claim for a breach of fiduciary duty" based on the facts alleged).  Of course, to the extent Chinese law does not recognize the sort of claims alleged by Ms. Zhang, that would provide another ground for granting Counter-Defendants' motion.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Counter-Defendants' motion for judgment on the pleadings is denied as to the second counterclaim and granted as to the seventh through ninth counterclaims.

IT IS SO ORDERED.

Dated: 9/28/2022

*Saundra B. Armstrong* RS
Richard Seeborg for Saundra B. Armstrong
United States District Judge