UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF LELAND STANFORD JUNIOR UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>YUZHEN ZHANG, et al.,<br><br>Defendants. | Case No. 19-cv-02904-JST<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL**<br><br>Re: ECF No. 88 |

Before the Court is Plaintiff the Board of Trustees of the Leland Stanford Junior University's ("Stanford") motion to disqualify DLA Piper LLP (US) ("DLA Piper") as counsel for Defendant Yuzhen Zhang. ECF No. 88. The Court will grant the motion.

I.   **BACKGROUND**

This action involves a dispute over the ownership of papers of Rui Li, "a prominent Chinese political figure and outspoken critic of the leaders of the" Chinese Communist Party. ECF No. 15 ¶ 12. Li "created personal diaries" and "maintained letters, photographs, and other materials from 1938 to 2018." *Id.* ¶¶ 16-17. In 2019, Stanford brought an action against Li's widow, Zhang, seeking to quiet title to these materials. In 2020, Zhang filed a counterclaim against Stanford and Li's daughter, Nanyang Li, asserting eight counterclaims for: (1) copyright infringement; (2) public disclosure of private facts; (3) intentional infliction of emotional distress; (4) conversion; (5) aiding and abetting conversion; (6) civil conspiracy to commit conversion; (7) unjust enrichment; and (8) enforcement of a Chinese judgment.[1]   ECF No. 46 ¶¶ AO-CT, DV-EG.

---

[1] Zhang also brought claims for breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and conspiracy to commit a breach of fiduciary duty, but judgment on the pleadings for these claims was granted in favor of Stanford. ECF No. 100.

Since the inception of this lawsuit, Stanford has been represented by the law firm of Pillsbury Winthrop Shaw Pittman LLP, and since December 20, 2019, Zhang has been represented by Matthew Jacobs. *See* ECF No. 95-1 ¶ 4. When Jacobs began representing Zhang, he was a partner in the law firm of Vinson & Elkins LLP ("Vinson & Elkins"). *Id.* ¶ 2. Between January and February 2022, Jacobs transitioned from his position at Vinson & Elkins to a new position as a partner in the law firm of DLA Piper. *Id.* ¶¶ 7-10. Zhang is currently represented by DLA Piper.

On August 14, 2018, DLA Piper and Stanford executed an engagement letter that stated DLA Piper would "represent [Stanford] in connection with patent prosecution matters[.]" ECF No. 95-7 at 2-3. The letter also indicated that DLA Piper's "representation of [Stanford] with respect to a particular matter will terminate upon conclusion of the Firm's active involvement in the matter," and "[i]f, at any time, [the] engagement is limited to a specific matter, and at the time such matter is completed, [DLA Piper is] not representing [Stanford] in any other matters, [the] attorney-client relationship will be deemed terminated whether or not [DLA Piper] send[s] [Stanford] a letter to confirm such termination." *Id.* at 9. Several of Stanford's patents were licensed to CuraSen Therapeutics, Inc. ("CuraSen"). Accordingly, in February 2019, Stanford, CuraSen, and DLA Piper entered into a separate agreement titled "Client and Billing Agreement," which stated that "[Stanford] and [CuraSen] have agreed to use the law firm of [DLA Piper] to prepare, file and prosecute" certain identified patent applications. ECF No. 95-8 at 2. The agreement also noted that "Stanford remain[ed] the client of" DLA Piper and CuraSen was "the licensee of Stanford's interest in the Patents," as well as that CuraSen would be responsible for paying the fees and costs related to the patent prosecution, with Stanford being responsible for any past due payments so long as DLA Piper notified it within 30 days of payments 60 days past due. *Id.* The agreement further stated that DLA Piper should "interact directly with [CuraSen] on all patent prosecution matters related to the Patents," but Stanford must remain on all correspondence in the matter and has final approval over actions taken in the matter. *Id.* Both parties agree that DLA Piper's representation of Stanford is governed by these two agreements, but dispute whether DLA Piper's representation of Stanford and CuraSen constituted a joint representation. ECF Nos.

2

95 at 7-8, 96 at 3-4. DLA Piper asserts that the last time it billed for work on the matter involving Stanford and CuraSen was February 8, 2022. ECF No. 95-6 ¶ 35.

Prior to beginning work at DLA Piper, Jacobs informed the firm of his representation of Zhang and that Stanford was adverse to Zhang in this matter. ECF No. 95-1 ¶ 8. DLA Piper advised Jacobs that his representation of Zhang did not present any conflicts with DLA Piper's existing clients, and on March 10, 2022, the firm approved the representation. *Id.* ¶¶ 8-12. On March 11 and 16, 2022, Jacobs contacted Stanford's counsel regarding a discovery dispute in this matter, and provided his new contact information at DLA Piper. *Id.* ¶¶ 13-14. On March 17, 2022, Stanford's counsel replied to Jacobs, identifying a potential conflict between DLA Piper's representation of Zhang in this matter against Stanford and its representation of Stanford in the patent prosecution matters. ECF No. 95-4. Stanford's counsel's response also copied another partner in DLA Piper, Dr. Lisa Haile, who represented Stanford in the patent prosecution matters. *Id.* The same day, Haile contacted Stanford's general counsel and requested a "waive[r] [of] any potential conflict of interest," which Stanford declined to provide. ECF No. 95-9 at 2-4.

On March 31, 2022, CuraSen terminated its license agreement with Stanford, and shortly after, Haile contacted Stanford's general counsel, Yi-An Chen, requesting to speak "about the ending of [DLA Piper's] engagement with Stanford" because of the termination. ECF No. 95-10 at 2. Chen replied on April 1, 2022, disagreeing that DLA Piper's representation of Stanford had terminated under the terms of the engagement agreement and requesting that Haile speak with someone at Stanford's office of technology licensing. ECF No. 88-11 at 2. On April 7, 2022, Haile spoke with Chu Chang, a licensing associate at Stanford's office of technology licensing, regarding the termination of DLA Piper's representation. ECF No. 95-6 ¶ 37. Haile contends that she "explained that because CuraSen had terminated the License Agreement, the result was that DLA's joint representation of CuraSen and Stanford had ended, and that in light of the fact that there were only three active patent applications related to the licensed patent files, DLA [Piper] was not inclined to agree to a new representation of Stanford alone in connection with those patent applications." *Id.* After these conversations, Stanford found a new firm to represent it in the patent prosecution matters, and on May 2, 2022, DLA Piper confirmed that it had completed the

3

1   transfer of the files related to the patent prosecution to Stanford's new law firm. *Id.* ¶ 45.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332.

## III. LEGAL STANDARD

Motions for disqualification are governed by state law. *Radcliffe v. Hernandez*, 818 F.3d 537, 543 (9th Cir. 2016); *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Disqualification of counsel may be required if an attorney represents clients with conflicting interests. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1430-31 (1999). "When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm." *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1139 (1999).

There are two main factual circumstances where such conflicts of interest arise: (1) a successive representation where "an attorney [or law firm] successively represents clients with adverse interests"; and (2) a concurrent representation where "an attorney or a law firm simultaneously represents clients who have conflicting interests." *Id.* at 1137-38. "The primary fiduciary value at stake in each of these context differs, and the applicable disqualification standards vary accordingly." *In re Charlisse C.*, 45 Cal. 4th 145, 159 (2008); *City & Cnty. of San Francisco v. Cobra Sols., Inc.*, 38 Cal. 4th 839, 846 (2006) ("The interplay of the duties of confidentiality and loyalty affects the conflict of interest rules that govern attorneys.").

First, under the California Rules of Professional Conduct "[a] lawyer shall not, without informed written consent . . . , represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with . . . a former client[.]" Cal. R. Prof. Conduct 1.7(b). This prohibition exists because of the "enduring duty to preserve client confidences[.]" *Cobra Sols.*, 38 Cal. 4th at 847. "If the attorney fails to obtain such consent and undertakes to represent the adversary, the former client may disqualify the attorney by showing a 'substantial relationship' between the subjects of the prior and the current representations." *Id.* (quoting *Flatt v. Superior Ct.*, 9 Cal. 4th 275, 283 (1994)). Therefore, "'the power to disqualify is discretionary' and should be based on the balance

4

of 'competing interests' presented in a particular case." *Netlist, Inc. v. SK hynix Inc.*, No. 8:16-cv-01605-JLS-JCGx, 2016 WL 8905079, at *3 (C.D. Cal. Dec. 5, 2016) (quoting *White v. Experian Info. Sols.*, 993 F. Supp. 2d 1154, 1161, 1166 (C.D. Cal. 2014), *as amended* (May 1, 2014), *aff'd sub nom. Radcliffe*, 818 F.3d 537). These competing interests include "a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion." *SpeeDee Oil Change Sys.*, 20 Cal. 4th at 1145.

Second, the California Rules of Professional Conduct prohibit a lawyer from "represent[ing] a client if the representation is directly adverse to another client in the same or a separate matter" when the lawyer has not obtained "informed written consent from each client." Cal. R. Prof. Conduct 1.7(a). In that situation, "with few exceptions, disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other." *SpeeDee Oil Change Sys.*, 20 Cal. 4th at 1147. In the case of concurrent adverse representation, "a more stringent per se rule of disqualification applies" because it involves a breach of a duty of loyalty. *Id.*; *see also Flatt*, 9 Cal. 4th at 286 ("The mandatory rule of disqualification in cases of dual representations involving unrelated matters—analogous to the biblical injunction against 'serving two masters' (Matthew 6:24)—is such a self-evident one . . . ."); Cal. R. Prof. Conduct 1.7 cmt. 1 ("Loyalty and independent judgment are essential elements in the lawyer's relationship to a client."). The California Supreme Court has explained the need for a per se rule as follows:

> A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship.

*Flatt*, 9 Cal. 4th at 285 (emphasis in original). Furthermore, "[s]o valued is a lawyer's . . . duty of loyalty that, under the 'hot potato' doctrine, a lawyer cannot avoid California's automatic disqualification rule 'by unilaterally converting a present client into a former client prior to hearing on the motion for disqualification.'" *Netlist*, 2016 WL 8905079, at *3 (quoting *Flatt*, 9 Cal. 4th at 288).

5

1   The party seeking disqualification bears the burden of establishing the existence of a
2   disqualifying conflict by a preponderance of the evidence. *H.F. Ahmanson & Co. v. Salomon*
3   *Bros., Inc.*, 229 Cal. App. 3d 1445, 1452 (1999). "Because of [the] potential for abuse,
4   disqualification motions should be subjected to 'particularly strict judicial scrutiny.'" *Optyl*
5   *Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985)
6   (quoting *Rice v. Baron,* 456 F. Supp. 1361, 1370 (S.D.N.Y. 1978)); *see also Concat LP v.*
7   *Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004) ("Because disqualification is a drastic
8   measure, it is generally disfavored and should only be imposed when absolutely necessary.");
9   *SpeeDee Oil Change Sys.*, 20 Cal. 4th at 1144 ("A motion to disqualify a party's counsel may
10  implicate several important interests. Consequently, judges must examine these motions carefully
11  to ensure that literalism does not deny the parties substantial justice."). On the other hand, "where
12  California law mandates automatic disqualification, the Court may not substitute a more lenient
13  remedy." *Netlist*, 2016 WL 8905079, at *4. There, "[t]he paramount concern must be to preserve
14  public trust in the scrupulous administration of justice and the integrity of the bar. The important
15  right to counsel of one's choice must yield to ethical considerations that affect the fundamental
16  principles of our judicial process." *SpeeDee Oil Change Sys.*, 20 Cal. 4th at 1145; *see also State*
17  *Farm*, 72 Cal. App. 4th at 1428.

18  **IV.   DISCUSSION**

19  The parties disagree as to whether DLA Piper's representation of Stanford and Zhang
20  should be analyzed as a concurrent representation or as a successive representation. Stanford
21  argues that the rules for concurrent representation apply and require automatic disqualification
22  because (1) DLA Piper violated its ethical duties by concurrently representing Stanford and Zhang
23  from February 15, 2022 until April 20, 2022; and (2) "under the 'hot potato' rule, DLA Piper's
24  attempt to cure its ethical violation by discontinuing its representation of Stanford after Stanford
25  declined to waive the conflict is unavailing and improper." ECF No. 88 at 7. DLA Piper responds
26  that an automatic disqualification for its concurrent representation of Stanford and Zhang is
27  improper because DLA Piper "unknowingly assum[ed] . . . an adverse concurrent representation,"
28  which "has been resolved through the conduct of a third party[.]" ECF No. 95 at 5-6. It also

6

1  argues that, for the same reasons, the hot potato doctrine does not apply. *Id.*

2        **A.**      **California Rule of Professional Conduct 1.7(a)**

3  Stanford argues that DLA Piper violated its ethical duty under California Rule of Professional Conduct 1.7 when it concurrently represented Stanford in the patent prosecution matters and Zhang in this matter "during the period between February 15, 2022" and April 20, 2022. ECF No. 88 at 16. While DLA Piper disputes that it represented Stanford until April 20, 2022, it does not dispute that both Stanford and Zhang were its clients between February 15, 2022 and March 31, 2022, and it provides no response to the argument that it violated Rule 1.7 during this period. ECF No. 95 at 13-14. Instead, DLA Piper argues that any conflict that may have existed is cured, and California's hot potato doctrine does not apply, because: (1) "DLA [Piper] believed in good faith at the time . . . Jacobs joined the firm on February 15, 2022 that there was no conflict because it had conducted a conflicts check that did not detect the joint representation of Stanford and CuraSen"; (2) before being alerted of the conflict, the only work Jacobs conducted was telling "Stanford's counsel of his move, propos[ing] a discovery meet and confer, and onboard[ing] other DLA attorneys for the matter"; (3) when Stanford informed DLA Piper of the conflict, it "immediately stopped performing work for . . . Zhang and sought a waiver from Stanford"; (4) "DLA [Piper] essentially was not doing any work for Stanford at the time" it was alerted of the conflict; and (5) DLA Piper jointly represented Stanford and CuraSen, therefore its representation of Stanford ended when CuraSen terminated the patent license agreement on March 31, 2022 and it was not required to enter into a new representation of Stanford after that date. ECF No. 95 at 14-15.

California Rule of Professional Conduct states that "[a] lawyer shall not, without informed written consent from each client . . . , represent a client if the representation is directly adverse to another client in the same or a separate matter." Cal. R. Prof. Conduct 1.7(a). Unlike the hot potato doctrine, Rule 1.7 does not require that a lawyer "knowingly" undertake the concurrent representation. *See* Cal. R. Prof. Conduct 1.7; *see also Flatt*, 9 Cal. 4th at 289 (noting that under the rule preventing adverse concurrent representation it "does [not] matter that the intention and motives of the attorney are honest" (quoting *Anderson v. Eaton*, 211 Cal. 113, 116 (1930)); *Truck*

7

*Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1057 (1992), *reh'g denied and opinion modified* (June 10, 1992) (noting that California's hot potato doctrine prohibits a lawyer that "knowingly undertakes adverse concurrent representation" from "avoid[ing] disqualification by withdrawing from the representation of the less favored client"). Additionally, neither the amount of work of performed during the concurrent representation, the length of the concurrent relationship, nor the fact that the lawyer's relationship with one of the adverse parties may have terminated after a period of concurrent representation are relevant to the question of whether Rule 1.7 has been violated. *See* Cal. R. Prof. Conduct. 1.7; *see also Cal. Earthquake Auth. v. Metro. W. Sec., LLC*, 712 F. Supp. 2d 1124, 1128 (E.D. Cal. 2010) (disqualifying a law firm because of a concurrent representation where the law firm only performed "three hours of work" for the party seeking disqualification). In other words, the Court must consider only whether DLA Piper concurrently represented Stanford and another party that was directly adverse to Stanford in the same or different matter and whether Stanford waived the conflict of interest.

Here, Stanford has demonstrated – and DLA Piper concedes – that DLA Piper simultaneously represented Stanford in the patent prosecution matters and Zhang in this matter, where Stanford was directly adverse to Zhang, from February 15, 2022 until March 31, 2022. Both parties also agree that Stanford refused to waive the conflict. Accordingly, "[r]egardless of whether the conflict was inadvertent," the amount of time spent on Zhang and Stanford's actions while DLA Piper concurrently represented both clients, the length of DLA Piper's concurrent representation, or the fact that DLA Piper's representation of Stanford did end, "DLA Piper plainly breached the duty of loyalty." *See Netlist*, 2016 WL 8905079, at *5.[2]

### B. California's Per Se Disqualification Rule

Relying primarily on California Court of Appeal decision, *State Farm*, 72 Cal. App. 4th 1422, Stanford argues that DLA Piper's admitted concurrent adverse representation of Zhang and Stanford subjects it to California's per se disqualification rule, and therefore, DLA Piper must be disqualified. ECF No. 88 at 16-18. In response, DLA Piper argues that Stanford's "proffered

---

[2] DLA Piper was also the subject of a motion to disqualify in *Netlist*. 2016 WL 8905079, at *1.

8

rule" that "a conflict arising from an adverse concurrent representation must always be examined a[t] the time the adverse representation arose, regardless of whether any potential conflict has already been cured" incorrectly states the law. ECF No. 95 at 17-18. DLA Piper believes the identified rule "contravenes settled precedent," including California's hot potato doctrine; "disregards the 'important right to counsel of one's choosing'"; "offer[s] no benefit to Stanford (other than a strategic one)"; and would cause "Zhang [to] face substantial prejudice if forced to find new counsel." *Id.* at 18. DLA Piper further argues that "[t]he result in *State Farm* is inconsistent with court's own recitation of the rule earlier in the decision" and "other California cases (including from the California Supreme Court) that apply the hot potato rule." *Id.* at 19. Finally, DLA Piper argues that even if *State Farm* was correctly decided, it is inapposite because it "suggests that . . . disqualification may be warranted where a law firm either unilaterally terminates its client to cure such a conflict or knowingly takes on an adverse representation" and "neither element is present here." *Id.*

Under California law, "in all but a few instances, the rule of disqualification in simultaneous representation cases is a *per se* or 'automatic' one." *Flatt*, 9 Cal. 4th at 284 (emphasis in original). "The strict proscription against dual representation of clients with adverse interests thus derives from a concern with protecting the integrity of the attorney-client relationship rather than from concerns with the risk of specific acts of disloyalty or diminution of the quality of the attorney's representation." *Gilbert v. Nat'l Corp. for Hous. Partnerships*, 71 Cal. App. 4th 1240, 1256 (1999) (quoting *Forrest v. Baeza*, 58 Cal. App. 4th 65, 74 (1997)). California courts have identified two narrow exceptions to the per se rule: (1) "when counsel, upon discovery and absent consent, immediately withdraws from an unseen concurrent adverse representation which occurred by mere happenstance"; and (2) "where the concurrent representation arose as a result of an acquisition of the client by another company" and "the attorney did not . . . play[] any role in creating the conflict of interest," in which case the attorney may be permitted to withdraw. *State Farm*, 72 Cal. App. 4th at 1432 (quotation marks omitted).

The California Supreme Court has not directly addressed from which point in time courts must analyze a conflict interest – at the time the conflict arose or at the time the disqualification

9

motion is decided – when determining whether the per se disqualification rule applies. The California Court of Appeal, however, has addressed this question. *See State Farm*, 72 Cal. App. 4th 1422. When applying state law, a federal court must "embody *Erie* by 'follow[ing] the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently.'" *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 874 (9th Cir. 2021) (quoting *Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467 (1940)).

In *State Farm*, the Court of Appeal analyzed the conflict of interest at the time it arose. 72 Cal. App. 4th at 1432-33; *see also Netlist*, 2016 WL 8905079, at *4 ("In determining whether the per se disqualification rule applies, a court should evaluate the conflict of interest at the time it arose, not at the time a disqualification motion is adjudicated in court." (citing *State Farm*, 72 Cal. App. 4th at 1432-33)). The *State Farm* court held that the per se disqualification rule applied even though one of the cases that created a concurrent representation there "happened to settle before the disqualification motion was heard," because "there existed a period of time during which [the law firm] was simultaneously representing clients with adverse interests." 72 Cal. App. 4th at 1431-32. The Court of Appeal explained that the fact that the conflict of interest did not exist at the time of the motion for disqualification "should not absolve [the law firm] from its ethical obligations" where the law firm "knowingly undertook adverse concurrent representation when it filed the underlying complaint," noting that "[e]ven if [the law firm] had initially been unaware of this adverse representation, . . . [it had been] notified . . . of the conflict on at least two occasions before the" settlement. *Id.* at 1432. Therefore, "although this fortuitous settlement acted to sever [the law firm's] relationship with its preexisting client, it did not remove the taint of a three-month concurrent representation. Consequently, the mandatory disqualification rule applies." *Id.* at 1432-33.

Applying *State Farm* – as this Court must – DLA Piper's argument that analyzing a conflict at the time it arose is an incorrect statement of the law fails. *See id.* Nor do any of DLA Piper's criticisms of *State Farm* hold water.

DLA Piper first contends the Court should disregard *State Farm* because it is inconsistent with California law. It argues that *State Farm*'s result is inconsistent with the *State Farm* "court's

10

1  own recitation of the rule" that "the rule against conflicted representations extends to prior

2  conflicts only if the attorney 'unilaterally convert[s] a present client into a former client.'" *See*

3  ECF No. 95 at 18-19 (quoting *State Farm*, 72 Cal. App. 4th at 1431). But that argument misstates

4  the case and California precedent. Instead, *State Farm* was merely describing California

5  precedent on the hot potato doctrine to demonstrate how "inviolate . . . the duty of loyalty" is. 72

6  Cal. App. 4th at 1431. *State Farm* does not state that the adverse concurrent representation rule

7  applies to prior conflicts only if they are covered by the hot potato doctrine, and DLA Piper cites

8  no authority to support that proposition.

9        DLA Piper next argues that *State Farm* is inconsistent with California's hot potato

10 doctrine, as well as the purposes behind that doctrine and the per se disqualification rule, and that

11 the result in *State Farm* makes the doctrine "superfluous." *See* ECF No. 95 at 18-19. *State Farm*

12 applies exactly the purposes behind the per se disqualification rule because it "derives from a

13 concern with protecting the integrity of the attorney-client relationship rather than from concerns

14 with the risk of specific acts of disloyalty or diminution of the quality of the attorney's

15 representation." *Gilbert*, 71 Cal. App. 4th at 1256. The integrity of the attorney-client

16 relationship is damaged when the concurrent conflict arises. Thus, it is incorrect to state, as DLA

17 Piper does, that "no conflict of loyalty is implicated when the concurrent representation has

18 already ended." ECF No. 95 at 19. Similarly, the rationales behind the hot potato doctrine and the

19 per se disqualification rule, including the inviolate nature of the duty of loyalty, support the result

20 in *State Farm*. *See, e.g.*, *Flatt*, 9 Cal. 4th at 957. Moreover, the hot potato rule is not superfluous

21 in light of *State Farm* because it can apply when no concurrent representation exists, but "a lawyer

22 . . . abandon[s] a current client for a prospective one[.]" *See Netlist*, 2016 WL 8905079, at *5.

23       Finally, DLA Piper argues that applying *State Farm* "disregards the 'important right to

24 counsel of one's choosing'" and provides "no benefit to Stanford (other than a strategic one),"

25 while "Zhang would face substantial prejudice." These arguments misunderstand the balance of

26 interests at play. While California Supreme Court decisions on conflicts of interest acknowledge

27 the importance of the right to choose one's counsel and acknowledge the potential burdens of

28 changing counsel, they also note that "[t]he paramount concern must be to preserve public trust in

11

the scrupulous administration of justice and the integrity of the bar." *SpeeDee Oil Change Sys.*, 20 Cal. 4th at 1145. In short, in their totality, DLA Piper's arguments fall well short of providing "convincing evidence" that the California Supreme Court would have reached a different result than the *State Farm* court. *See Franklin*, 998 F.3d at 874. Accordingly, the Court must follow *State Farm*. *See id.*

Neither of the two cases relied upon by DLA Piper suggests a different outcome. ECF No. 95 at 18-19 (citing *Cole Grp., Inc. v. Manning*, No. CV 12-0104 RGK (FFMx), 2012 WL 12892365, at \*3 (C.D. Cal. Oct. 9, 2012); *Forrest v. Baeza*, 58 Cal. App. 4th 65, 80 (1997)). In *Cole Group*, the court found that the party seeking disqualification failed to "me[e]t its burden of demonstrating a simultaneous conflict of interest" had ever occurred. 2012 WL 12892365, at \*3. *Forrest* involved a concurrent adverse representation in a shareholder derivative suit, and in that special circumstance "while dual representation of a corporation and its directors is impermissible (at least if the directors are charged with fraud), the attorney who formerly represented both clients may continue to represent the individual ones." 58 Cal. App. 4th at 80. Those are not the facts here.

The Court also disagrees with DLA Piper that *State Farm* is distinguishable and "does not stand for the proposition that disqualification is automatic" in this case. *See* ECF No. 95 at 19 (emphasis omitted). Here, even accepting as true DLA Piper's contention that the attorney-client relationship between it and Stanford ended on March 31, 2022, as in *State Farm*, the concurrent representation of Stanford and Zhang continued even after DLA Piper was informed of the adverse concurrent conflict of interest and Stanford declined to waive the conflict. The fact that DLA Piper did not perform legal work on either matter is not relevant because the per se disqualification rule has been applied to firms that have performed no legal work while concurrently representing adverse parties. *See, e.g.*, *Cal. Earthquake Auth.*, 712 F. Supp. 2d at 1127-28; *see also Netlist*, 2016 WL 8905079, at \*5. As in *State Farm*, the Court finds that the "fortuitous" end of the attorney-client relationship between Stanford and DLA Piper "did not remove the taint of a . . . concurrent representation." 72 Cal. App. 4th at 1432-33; *see also Netlist*, 2016 WL 8905079, at \*5 (disqualifying DLA Piper for an adverse concurrent representation even though that concurrent

representation had ended because DLA Piper could not "abruptly sever[] its relationship with an active client and then avoid disqualification based on the comparatively little work performed during the period of concurrent representation up to that point"). Accordingly, the Court finds that DLA Piper must be disqualified pursuant to the per se disqualification rule.³

## CONCLUSION

For the foregoing reasons, the Court grants Stanford's motion to disqualify.

**IT IS SO ORDERED.**

Dated: March 6, 2023



JON S. TIGAR
United States District Judge

---

³ In light of this conclusion, the Court need not determine whether the hot potato doctrine applies.